**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CAR-FRESHNER CORPORATION

and

JULIUS SÄMANN LTD.,

                                    Plaintiffs,

                    v.

CROCS, INC.,

                                    Defendant.

Civil Action No:
7:16-cv-0068-GLS-TWD

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION**
**FOR JUDGMENT ON THE PLEADINGS**

COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, NY  10036-1525
(212) 790-9200

HANCOCK ESTABROOK, LLP
1500 AXA Tower I
100 Madison Street
Syracuse, New York 13202

{H2857081.1}

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

FACTS AND PROCEDURAL HISTORY .......................................................................3

ARGUMENT....................................................................................................................5

1.      Crocs Cannot Meet Its Burden of Proving Each of the Elements of Fair
Use ........................................................................................................................6

      A.      Crocs Used the Infringing Design As a Mark.......................................7

      B.      Crocs Did not Use the Infringing Design in a Purely Descriptive
Sense ....................................................................................................10

      C.      Crocs Used the Infringing Tree Design in Bad Faith ..........................17

CONCLUSION...............................................................................................................18

Plaintiffs CAR-FRESHNER Corporation ("CFC") and Julius Sämann Ltd. ("JSL") (collectively "Plaintiffs") submit this memorandum of law in opposition to the Motion for Judgment on the Pleadings filed by defendant Crocs, Inc. ("Crocs").

## PRELIMINARY STATEMENT

For more than 60 years, Plaintiffs have used a distinctive tree design as a trademark in connection with Plaintiffs' famous air fresheners and related merchandise, including clothing and footwear (the "Tree Design Marks"). The Tree Design Marks are famous among consumers and are the subject of numerous incontestable federal trademark registrations. Defendant Crocs has used a virtually identical copy of the Tree Design Marks in series of advertisements -- print, online and in-store -- promoting Crocs' footwear. Crocs' infringing design is not simply confusingly similar to the Tree Design Marks – as would be the case in most instances of trademark infringement -- but is rather a carbon-copy, replicating in detail the shape, silhouette, and overall design and commercial impression of the Tree Design Marks. Crocs' use of this infringing design causes a likelihood of confusion with and dilution of Plaintiffs' valuable marks.

Notwithstanding this gratuitous and unlawful copying, Crocs seeks judgment on the pleadings that its infringing conduct is shielded by the affirmative defense of fair use, which requires that Crocs show that it used the accused designation (1) other than as a mark, (2) in only a descriptive way, and (3) in good faith. As the Second Circuit has made clear, and as Judge McAvoy confirmed just weeks ago in a closely similar context, this fact-intensive defense is ill-suited to resolution on the pleadings. Moreover, particularly when considered in light of recent Second Circuit law Crocs ignores, Crocs fails by a wide margin to meet its burden of proving each of the elements of fair use as a matter of law.

1

First, Crocs essentially ignores two of the three required elements of fair use. It does not even try establish that the infringing design was used "other than as a mark," likely because Crocs' ubiquitous use of the infringing design across multiple media was clearly as a "symbol to attract public attention" in a fashion that defeats fair use under recent Second Circuit law. In like fashion, Crocs punts on the critical factor of its good faith. Again ignoring recent Second Circuit precedent, it offers no explanation for why its design is a spot-on counterfeit of the Tree Design Marks, the registrations for which provide notice of Plaintiffs' rights.

With virtually no discussion of these elements, Crocs instead predicates its motion on a single conclusory argument that the accused advertisements are "descriptive of the Christmas and holiday season." But those advertisements make no reference to Christmas at all and use the infringing tree design as a recurring marketing symbol that transcends a merely descriptive purpose. In service of the same argument, Crocs mischaracterizes CAR-FRESHNER Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267 (2d Cir. 1995) as holding that others are free to use Plaintiffs' Tree Design Marks to "describe Christmas." However, that case, where defendant used a very different tree shape to convey the pine-scent of a product, is so factually distinguishable that it provides little guidance for the instant dispute. Judge McAvoy's recent denial of a fair use defense asserted against Plaintiffs offers a much closer parallel to the instant motion.

Crocs' specious pitch on this motion is that Plaintiffs seek to "monopolize" a tree design to "describe the holidays." This case presents no such issue, as there is no dispute that advertisers may fairly use Christmas imagery during the holidays. There are countless ways to convey the holidays and even specifically Christmas trees without copying and broadcasting across multiple media an identical replica of another's trademark. Deliberate and faithful copying is not a fair use, and Crocs' motion should be denied.

2

## FACTS AND PROCEDURAL HISTORY

Plaintiffs' complaint alleges that since 1952, Plaintiffs have used the Tree Design Marks in connection with their famous air-fresheners and other goods and services, including T-shirts, sweatshirts, hats, backpacks, duffle bags and many others.  Complaint (Docket No. 1) ¶¶ 9-10, 12.  Plaintiffs use the Tree Design Marks widely on packaging, on products themselves, throughout their marketing materials and advertisements, online, and as the configuration of Plaintiffs' well-known LITTLE TREES air fresheners.  Id. ¶13.  Third parties also license the Tree Design Marks from Plaintiffs, including in connection with shoes.  Id. ¶16.  Products bearing the Tree Design Marks are sold throughout the world in numerous trade channels, appear frequently in television and movies, and are promoted in a wide variety of media.  Id. ¶15.  As a result of this longstanding promotion and commercial success, the Tree Design Marks enjoy widespread public recognition and are famous symbols identifying Plaintiffs as the source of high quality products.  Id. ¶17-19.  Plaintiff JSL owns numerous U.S. Trademark Registrations for the Tree Design Marks, many now incontestable, for a variety of goods and services, including air fresheners, shirts, sweatshirts, t-shirts, caps and toys.  Id. ¶20-21.[1]

Defendant Crocs sells casual footwear.  Id. ¶25.  Crocs has recently marketed and promoted its footwear using a design virtually identical to Plaintiffs' Tree Design Marks in Crocs' in-store, print and online advertising.  Id. ¶¶26-27.  Examples of these advertisements (and close-ups of the infringing tree design) are reproduced in the Complaint ¶28 and appear below:

---

[1] Plaintiffs intend to amend their complaint to add Registration No. 3766310 covering the Tree Design, among other things, for "shirts and hats."

   

In Store                                                    Online

 

Online Store Locator                                        Print

The tree design displayed in these advertisements is a faithful replica of Plaintiffs' Tree

Design Marks, copying the shape and design exactly:

**Plaintiffs' Tree Design Mark vs. Crocs' Infringing Tree Design**

 

Notably, the infringing advertisements make no reference to Christmas, are not alleged to have

run only during Christmas time, and depict the infringing design in various colors, including

black on white, green on red, and brown with a red outline.  With the exception of the in-store

advertisement, none display any kind of marketing symbol other than the tree design as the only

source-indicating design or logo.

        The Complaint further alleges that Crocs was aware of Plaintiffs' Tree Design Marks but

4

used them "with disregard for Plaintiffs' rights." Id. ¶31.  Finally, Plaintiffs allege that Crocs'

use of these unlawful designs causes a likelihood of confusion and dilution and constitutes

trademark infringement, trademark dilution and unfair competition under federal and state law.

Id. ¶¶30, 32, 34-60.

On March 15, 2016, Crocs answered and asserted as its Fourth Affirmative Defense and

without elaboration that "One or more of the claims asserted by Plaintiffs are barred because any

alleged use by Crocs was a fair use."  Docket No. 15.  On July 1, 2016, Crocs filed the instant

motion.

## ARGUMENT

Crocs moves pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings.  "In

deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion

under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all

reasonable inferences in favor of the nonmoving party." Mantena v. Johnson, 809 F.3d 721,

727-28 (2d Cir. 2015).  Under Rule 8, a plaintiff's claims need only have facial plausibility,

which requires that the plaintiff plead factual content "that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009).  "The function of a motion to dismiss is merely to assess the legal

feasibility of the complaint, not to assay the weight of the evidence which might be offered in

support thereof." Quinn v. Walgreen Co., 958 F. Supp. 2d 533, 540 (S.D.N.Y. 2013) (quoting

Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.

1984)).  See also Mahoney v. Sony Music Entm't, 2013 U.S. Dist. LEXIS 18181, at *14-15

(S.D.N.Y.  Feb. 11, 2013) ("Even after Twombly and Iqbal, the Court's role in deciding a motion

to dismiss 'is merely to assess the legal feasibility of the complaint'") (citation omitted).

In reversing the grant of a motion to dismiss on fair use grounds, the Second Circuit recently noted, "[b]ecause fair use is an affirmative defense, it often requires consideration of facts outside of the complaint and thus is inappropriate to resolve on a motion to dismiss." Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2013).  See also CAR-FRESHNER Corp. v. Sun Cedar, Inc., 2016 U.S. Dist. LEXIS 90669, at *13 (N.D.N.Y. July 13, 2016) (same); A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, 131 F. Supp. 3d 196, 210 (S.D.N.Y. 2015) ("fair use doctrine necessarily raises questions of fact that cannot be resolved on a motion to dismiss"). Crocs neither mentions the Kelly-Brown case, which undermines and contradicts so many of its arguments, nor acknowledges the inherent obstacles to adjudicating fair use at the pleading stage.

1.      **Crocs Cannot Meet Its Burden of Proving Each of the Elements of Fair Use**

Statutory fair use is an affirmative defense for which Crocs bears the burden of proof. See Kelly-Brown, 717 F.3d at 311-312; Sun Cedar, 2016 U.S. Dist. LEXIS 90669, at *13.  In order to establish the defense, Crocs must prove that "the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  Kelly-Brown, 717 F.3d at 303, 305, 308; Sun Cedar, 2016 U.S. Dist. LEXIS 90669, at *13.  The Lanham Act codifies the defense, as applied to incontestable registrations such as those owned by Plaintiffs, as use "otherwise than as a mark . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party."  15 U.S.C. § 1115(b)(4).  In order to rebut Crocs' 12(c) motion regarding fair use, Plaintiffs "are held only to the usual burden of a motion to dismiss . . . which is to say they must plead sufficient facts to plausibly suggest that they are entitled to relief."  Kelly-Brown, 717 F.3d at 308; Sun Cedar, 2016 U.S. Dist. LEXIS 90669, at *13.  Crocs comes nowhere near establishing any of the three elements, particularly when measured against the demanding standards of Rule 12(c).

6

## A.     <u>Crocs Used the Infringing Design As a Mark</u>

While Crocs' motion recites the three elements of fair use, it never substantively

addresses the critical first element:  that its use of the infringing design was "other than as a

mark."  <u>See</u> <u>Kelly-Brown</u>, 717 F.3d at 308.[2]  The reason is clear.  Plaintiffs' complaint, and the

accused advertisements on their face, establish that Crocs use cannot satisfy this prerequisite for

fair use.

In assessing whether a defendant invoking fair use is using the accused term as a mark or

not, Courts ask whether the accused infringer was "using the term 'as a symbol to attract public

attention.'"  <u>Id.</u> (citations omitted).  <u>See also</u>  J.T. McCarthy, <u>McCarthy on Trademarks and</u>

<u>Unfair Competition</u> § 11:46, at 11-143 – 11-144 (4th ed. 2016) (for purposes of fair use,

infringing trademark usage is evidenced by use of a term as an "attention-getting symbol"; citing

cases).  Among other things, relevant factors may include "lettering, type style, size and visual

placement and prominence of the challenged words."  <u>McCarthy</u> § 11:46, at 11-143 – 11-144.

<u>See also</u> <u>Sun Cedar</u>, 2016 U.S. Dist. LEXIS 90669, at *15 ("The Court asks whether the

defendant uses the mark 'as a symbol to attract public attention,' examining factors such as the

size, stylization, placement, consistency, frequency and nature of the uses of the design").  Even

where a "single iteration" of an accused term or device would not independently qualify as a

trademark use, "recurring themes or devices" are more likely to merit protection.  <u>See</u> <u>Kelly-</u>

<u>Brown</u>, 717 F.3d at 309.  <u>See also</u> <u>McCarthy</u> § 11:46, at 11-145 – 11-146 ("While a single use of

---

[2] This first element of fair use defense – use "other than as a mark" – does not conversely require that a plaintiff show use "as a mark" to prove infringement.  In reversing the lower Court's grant of a motion to dismiss, the Second Circuit specifically rejected the proposition that a plaintiff must show use "as a mark" to prove infringement.  <u>See</u> <u>Kelly-Brown</u>, 717 F.3d at 308 ("We therefore decline to adopt the rule that Lanham Act plaintiffs must show that the defendant was using the allegedly infringing content 'as a mark' as a threshold issue in order to establish consumer confusion").

designation" may not qualify, "repeated use in various formats and media can qualify as use as a trademark"). Stated otherwise, "[r]epetition is important because it forges an association in the minds of consumers between a marketing device and a product." Kelly-Brown, 717 F.3d at 310

Thus, for instance, in reversing the grant of a motion to dismiss on fair use grounds, the Second Circuit noted that plaintiff pled that defendant used the accused slogan in "several unique instances" that "collectively constitute use as a mark." Those instances included use on a magazine, at an event, in social media and on a video. That "array of uses" and "repetition across various forms of media" adequately established trademark use sufficient to defeat a motion to dismiss. See Kelly-Brown, 717 F.3d at 308, 310. Likewise, in denying a closely similar motion brought against Plaintiffs in another case in this District, Judge McAvoy held that a defendant selling cedar tree-shaped air fresheners had used the accused shape "as a mark to attract public attention," where defendant used the shape "prominently across multiple advertising platforms," including a website, point-of-sale displays, and in recruitment efforts. See Sun Cedar, 2016 U.S. Dist. LEXIS 90669, at *15-16.

Here of course, Plaintiffs cannot know the full extent of Crocs' usage of the copycat design, either in terms of scope or timing. However, even based on preliminary investigations, the Complaint alleges that Crocs has used the infringing design "in stores, on-line and in print," and shows images of four separate and visually distinct advertisements, in different media, using the design:

- an in-store sign showing the copied design outlined against a dotted green background;

- an online discount offer showing the tree design outlined in red against what appears to be brown wooden boards;

- a website "store locator" showing the tree design in a teardrop shape or bubble illustrating where a Crocs store may be found; and

- a print advertisement showing the tree shape in black against white, all against a black dotted background.

See Complaint ¶28 and images at p. 4, infra. Thus, the infringing tree design appears not only in different media – including print, online and in-store – but is also used in different contexts and against different backgrounds that collectively create an association between that infringing design and Crocs and its products.  See Sun Cedar, 2016 U.S. Dist. LEXIS 90669, at *16.

Moreover, the infringing design clearly serves as an "attention-getting symbol," both by virtue of the context in which it is used and its repetition across different media.  Indeed, in the depicted advertisements, the infringing tree design is virtually the only visible "symbol" that could represent a logo or designation of source, with the remainder of the displays occupied by generic wording such as "50% Off" or "Find A Store."  A consumer looking for any indication of source would naturally be drawn to this kind of recurring imagery or theme in discerning who or what is being advertised, as the remainder of the ads give little indication of anything other than a discount.

Additionally, while by no means dispositive, the Second Circuit has noted that "the prominent display of the defendants' own trademarks" can contribute to a finding that the defendants were not using a different distinct phrase as a mark.   See Kelly-Brown, 717 F.3d at 310 (citing Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co., 125 F.3d 28, 30-31 (2d Cir. 1997) but ultimately rejecting argument that use of OPRAH mark defeated fair use); Sun Cedar, 2016 U.S. Dist. LEXIS 90669, at *16 (Defendant's use of "Sun" on infringing design not sufficient to establish use other than as mark).  Here in contrast, other than in fine print in one of the ads, the "Crocs" name is not displayed, leaving the tree design as the only facially apparent indication of source.

Finally, where the copycat tree design is emblazoned on different backgrounds in

9

different shapes and colors, the consistency of the infringing tree silhouette conveys a recurring

marketing theme and symbol rather than benign descriptive imagery.  Plaintiffs themselves use

the Tree Design Mark in many different iterations and contexts, including even with respect to

the different iterations of the registered Tree Design Marks in full black, outline and with internal

banners.  <u>See</u> Complaint ¶¶13, 20.  Crocs' use imitates that application of a distinctive logo

across different formats, reinforcing the infringing design as a "recurring theme or device."

<u>Kelly-Brown</u>, 717 F.3d at 309.  Thus, even had Crocs elected to address the first fair use factor,

it could not have shown that the Complaint fails to make out a plausible or colorable case of

trademark use.

### B.    <u>Crocs Did not Use the Infringing Design in a Purely Descriptive Sense</u>

The second required fair use factor, use of the accused term or design in a purely

descriptive sense, is a demanding one:

> Statutory fair use also requires that the challenged design be "used . . . <u>only</u> to describe
> the goods or services of" the defendant. 15 U.S.C. § 1115(b)(4)(emphasis added).
> Although designs can serve both descriptive and source indicative functions, see J.T.
> McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 15:6 (4th ed. 2015), the
> use of a design other than descriptively defeats statutory fair use.

<u>Sun Cedar</u>, 2016 U.S. Dist. LEXIS 90669, at *17-18 (emphasis in original; citing <u>Kelly-Brown</u>,

717 F.3d at 308 ("where another person uses the words constituting that mark in a purely

descriptive sense, this use may qualify as permissible fair use")).  <u>See also</u> 15 U.S.C. §

1115(b)(4) (defining fair use as use of "term or device which is descriptive of and used fairly and

in good faith <u>only</u> to describe the goods or services of such party").  Thus, the question is not

whether Crocs' infringing design has any descriptive connotation, but rather whether it is "purely

descriptive" and functions "only to describe the goods and services" of Crocs and not for any

other purpose.  It does not.

10

Crocs predicates its motion entirely on this one element of fair use, arguing that the ads in question are clearly "on their face" descriptive of Christmas:

> Crocs' alleged use of a Christmas tree design in its holiday marketing materials is likewise descriptive of Christmas and the holiday season.  It is apparent on the face of the materials that they are holiday-themed:  they refer to "Black Friday," use red and green, and feature snow and frost effects … Under the circumstances, Crocs' alleged use of a Christmas tree design as alleged in the complaint was a fair use as a matter of law because it was descriptive of the holiday season.

Crocs' Br. at 6.  Crocs' description of the infringing ads does not comport with reality.   Only one of the four ads references "Black Friday" (which is in any case falls during Thanksgiving week); none otherwise mentions Christmas or the holidays in any way; and the alleged "snow and frost effects" Crocs imagines are either entirely absent or so subtle as to be indiscernible. The alleged "Christmas tree" in the Crocs ads is actually a replica of Plaintiffs' Tree Design Marks (which have nothing to do with the holidays) and is not identified in any way as a holiday symbol.  One of Crocs' ads is entirely in black and white, while another one features the red outline of the infringing tree against a brown wood background.  Neither is facially "holiday themed."

Indeed, even the "green" color which Crocs argues conveys Christmas to consumers when combined with red is actually the very same shade Crocs uses throughout its marketing materials at all times of the year.  The Court can take judicial notice of the following excerpts from the homepage of the Crocs website (www.crocs.com) as it appeared on July 18, 2016, heavily infused with the same green color[3]:

---

[3] See Enigma Software Grp. USA, LLC v. Bleeping Computer LLC, 2016 U.S. Dist. LEXIS 89160, at *73 n.27 (S.D.N.Y. July 8, 2016) (citation omitted) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of

11



In fact, a comparison of Crocs' infringing "store locator" using the unlawful tree design with the current website's corresponding "store locator" underscores that there is nothing particularly "holiday themed" at all about the infringement:

**Infringing Design vs. Current (July 2016) Design**



Crocs cannot seriously maintain that the red lettering in the design on the left is "as a matter of law" a pure description of Christmas, distinguishable from its current summer design.

Consumers would be hard-pressed to see any meaningful difference other than use of Plaintiffs' Tree Design Marks as a symbol to attract public attention.   Crocs' baseless assumption that consumers will interpret the infringements as "holiday themed" cannot satisfy its burden of

---

accurate and ready determination'"); <u>Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC</u>, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (judicial notice of printouts of defendant's websites); <u>Belizaire v. Rav Investigative & Sec. Servs Ltd.</u>, 61 F. Supp. 3d 336, 347 (S.D.N.Y. 2014) ("This Court . . . may take judicial notice of the information contained on Defendant's own website").

proving that the use is "purely descriptive" and conveys nothing other than the holidays.

To support this faulty logic, Crocs repeats multiple times throughout its brief that the Second Circuit's holding in CAR-FRESHNER Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267 (2d Cir. 1995) establishes that "use of a Christmas tree design to describe the holiday season does not infringe" Plaintiffs' trademarks "as a matter of law."  Crocs' Br. at 3, 5, 7.  Apart from the fact that the infringing design here in no way describes Christmas, S.C. Johnson announces no such broad principle and simply held on its unique facts, strikingly different that those at issue here, that defendant was entitled to summary judgment on the issue of fair use.  Had the Second Circuit established a general rule that anyone can use Plaintiffs' Tree Design Marks with impunity during the holiday season, Judge McAvoy would have had no reason only weeks ago to analyze and reject the same defense on facts much closer to those at issue in the instant case.  See Sun Cedar, 2016 U.S. Dist. LEXIS 90669, at *18-19 (distinguishing S.C. Johnson because, while defendant "surely uses the cedar tree shape to refer to the pine scent of its air fresheners," Plaintiffs also "present a plausible allegation that Defendant uses the cedar tree shape - a design nearly identical to Plaintiffs' long-established mark - as its own mark to indicate the source of its products").  See also CAR-FRESHNER Corp. v. Getty Images, Inc., 822 F. Supp.2d 167, 179 (2011) (rejecting "nominative" fair use defense).

In any case, the facts of S.C. Johnson readily distinguish it from the instant dispute. During the Christmas holiday season, S.C. Johnson sold a pine-tree shaped air freshener under its GLADE PLUG-INS house brands and named the item the "Holiday Pine Potpourri."  S.C. Johnson, 70 F.3d at 268.  Unlike the identical copy Crocs has used here, the GLADE product used a generic Christmas tree shape:

13



See Car-Freshner Corp. v. S.C. Johnson & Son, Inc., 7:93-cv-01461-TJM-DS (N.D.N.Y. Dec. 28, 1993) (Answer) (Docket No. 4).[4]  On summary judgment, the Second Circuit held this product to constitute a fair use, noting that that the pine-tree shape was descriptive insofar as it "refers to the pine scent of its air freshening agent" and "to the Christmas season, during which Johnson sells this item."   S.C. Johnson, 70 F.3d at 270.  The Court further held that defendant did not use the tree shape as a mark, because both the product and its packaging prominently displayed the GLADE PLUG-INS and GLADE marks and Defendant's corporate logo.  Id.

The facts and posture of the instant matter bear no resemblance to those in S.C. Johnson. Whereas S.C. Johnson was decided on summary judgment, Crocs seeks relief on the pleadings. Whereas the pine-tree shape of the S.C. Johnson product conveyed the pine-scent of the product, Crocs' tree conveys nothing about the physical attributes of any product.  Whereas the S.C. Johnson product was expressly holiday-themed, sold only during the holidays, and used the name "Holiday Pine Potpourri" to convey its scent and the Christmas season, the Crocs ads make

---

[4] The Court may take judicial notice of this image appearing in a publicly filed pleading. "[M]atters as to which judicial notice may be taken, such as pleadings in other lawsuits and other public records may also be considered on a motion to dismiss."  Agron v. Douglas W. Dunham, Esq. & Assocs., 2004 U.S. Dist. LEXIS 5412, at *6 (S.D.N.Y. Mar. 31, 2004).  See also Ndremizara v. Swiss Re Am. Holding Corp., 93 F. Supp. 3d 301, 313 n.7 (S.D.N.Y. 2015) ("The Court may take judicial notice of pleadings filed in other cases in deciding a motion to dismiss without converting that motion into a motion for summary judgment").

no reference to Christmas, the holidays or anything else having to do with trees at all.  And, whereas the S.C. Johnson product prominently bore the GLADE marks and defendant's corporate logo as an indicia of origin, the Crocs ads have no equally prominent brand identifiers other than the infringing tree design.

Most important, whereas S.C. Johnson used a generic tree shape, Crocs has used an exact copy of the Tree Design Marks.  Contrary to Crocs' strawman argument, Plaintiffs do not seek to "monopolize a Christmas tree design in connection with the holiday season," Crocs' Br. at 1, but only to protect the particular design Plaintiffs have spent more than a half century cultivating and promoting.  In choosing a tree design to promote its products, Crocs had "at its disposal a number of alternative [designs] that could adequately capture" any holiday message it wished to convey.  See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., 618 F.3d 1025, 1042 (9th Cir. 2010).  See also EMI Catalogue P'shp. v. Hill, Holliday, Connors, Cosmopulos Inc., 2000 U.S. App. LEXIS 30761, at *20-21 (2d Cir. Sept. 15, 2000) (the scope of the fair use should be related to … whether there are other terms available to describe the pertinent characteristic").  The Court may take judicial notice of the various non-infringing tree designs that Crocs has used, for example, in online promotions appearing on its Facebook page[5]:

---

[5] See the following links:

https://www.facebook.com/Crocs/photos/a.82883106241.83078.13411611241/10151201907911242/?type=3&theater

https://www.facebook.com/Crocs/photos/a.10150938254531242.419572.13411611241/10151870790201242/?type=3&theater

https://www.facebook.com/Crocs/photos/a.10152846927341242.1073741833.13411611241/10153383191551242/?type=3&theater

https://www.facebook.com/Crocs/photos/a.82883106241.83078.13411611241/10152548897276242/?type=3&theater







The availability of these alternative designs "is important because it suggests that [Crocs'] use was more suggestive than descriptive" and eliminates "concerns regarding the monopolization … that lie at the heart of the fair use defense." See Fortune Dynamic, 618 F.3d at 1042-43.

Notably, in the advertising campaign that provoked the instant suit, Crocs elected not to use such readily available alternative designs it has used in the past, but instead displayed an exact replica of Plaintiffs' Tree Design Marks. If Crocs' "monopolization" argument is correct – that Plaintiffs' exact Tree Design Marks can be copied and marketed freely so long as they are characterized as "Christmas trees" – then likewise Crocs' alligator logo trademark[6] could be

---

https://www.facebook.com/Crocs/photos/a.82883106241.83078.13411611241/10150432985501242/?type=3&theater

    [6] The Court may take judicial notice of Crocs' U.S. Trademark Registration No. 4191090 for the design depicted below. See Telebrands Corp. v. Del Labs., Inc., 719 F. Supp. 2d 283, 287

copied to advertise alligator-skin handbags, and the famous John Deere logo could be used with impunity by anyone claiming it needs to convey the image of a deer to sell hunting equipment. The doctrine of fair use accommodates good faith, non-trademark uses of purely descriptive terms and devices; it does not excuse the plagiarist who uses a well-known trademark and logo to promote its own goods, sow confusion among consumers, and dilute the distinctive qualities of a well-known mark.

### C.      Crocs Used the Infringing Tree Design in Bad Faith

As the proponent of a fair use defense, Crocs also bears the burden of establishing good faith, see Kelly-Brown, 717 F.3d at 312.  But, as in the case of the first element regarding use other than as a trademark, Crocs has essentially nothing to say about good faith.  Its sole discussion of this required third factor is a one-sentence reference to language in S.C. Johnson that defendant did not act in bad faith, because it was "entitled to use a pine-tree shape descriptively."  See Crocs' Br. at 6.  Crocs breathes not a single further word about its own good faith.  Its silence on this element would hardly satisfy its burden of proof at trial, and so certainly cannot support dismissal on the pleadings.

As the Second Circuit has recently instructed, in fending off a fair use defense, a "plaintiff may also show absence of good faith where a junior user had knowledge or constructive knowledge of the senior user's mark and chose to adopt a similar mark.  Id. at 313

---

n. 3 (S.D.N.Y. 2010) ("The Court may properly take judicial notice of official records of the United States Patent and Trademark Office"):



(citation omitted); Sun Cedar, 2016 U.S. Dist. LEXIS 90669, at *20.  Here, Plaintiffs' six

registered marks, identified and depicted in ¶20 of the Complaint, provide constructive notice of

Plaintiffs' rights in those marks.  See 15 U.S.C. §1072 ("Registration on the principal register

provided by this chapter … shall be constructive notice of the registrant's claim of ownership

thereof"); The Fusco Group, Inc. v. Loss Consultants Int'l., Inc., 462 F. Supp. 2d 321, 328

(N.D.N.Y. 2006); H.S.W. Enters., Inc. v. Woo Lae Oak, Inc., 171 F. Supp. 2d 135, 143

(S.D.N.Y. 2001).  The Complaint also alleges on information and belief that Crocs "was aware"

of the Tree Design Marks before implementing its infringement, but "nevertheless intentionally

proceeded" with its infringement "with disregard for Plaintiffs' rights."  Complaint ¶31.  Such

facts alleged in the pleadings amply satisfy the Second Circuit's standard for bad faith.

Additionally, the Complaint alleges what simple viewing proves – that Crocs adopted not

just any tree design, but a "nearly identical" copy of Plaintiffs' Tree Design Marks.  Complaint

¶¶27-28.  Just as copyright law recognizes that works can be so "strikingly similar" as to

preclude independent creation, see, e.g., Crown Awards, Inc. v. Disc. Trophy & Co., 326 F.

App'x. 575, 577 (2d Cir. 2009), the exact replication of Plaintiffs' Tree Design Marks

undermines any protestation by Crocs of its good faith.  Stated otherwise, the inexplicable

similarities between the parties' designs is itself proof of bad faith sufficient to defeat Crocs'

motion.  Thus, Crocs has not and cannot satisfy its burden of establishing at the pleadings stage

that it uses the infringing design in good faith.

## CONCLUSION

For the foregoing reasons, Crocs' motion for judgment on the pleadings should be

denied.

COWAN LIEBOWITZ & LATMAN, P.C.

By:   s/Jonathan Z. King
       Jonathan Z. King
       114 West 47th Street
       New York, New York  10036
       (212)790-9200
       jzk@cll.com

       HANCOCK ESTABROOK, LLP
       Ashley D. Hayes (Bar Roll No: 511333)
       1500 AXA Tower I
       100 Madison Street
       Syracuse, New York 13202
       (315) 565-4500
       ahayes@hancocklaw.com


       Attorneys For Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 22, 2016, I caused the foregoing Plaintiffs' Opposition to Defendant's Motion for Judgment on the Pleadings to be filed with the Clerk of the District Court using the CM/ECF system, which is believed to have sent notification of such filing to the following:

| | |
|---|---|
| William C. Rava, Esq. | wrava@perkinscoie.com |
| Alexander Garcia, Esq. | ajagarcia@perkinscoie.com |
| Elizabeth M. Banzhoff, Esq. | ebanzhoff@perkinscoie.com |
| Jason S. Nardiello, Esq. | jnardiello@barclaydamon.com |
| John D. Cook, Esq. | jcook@barclaydamon.com |

Dated:  July 22, 2016.                               s/Ashley D. Hayes
                                                                    Ashley D. Hayes, Esq.
                                                                    Bar Roll No. 511333

20