# BARCLAY DAMON<sup>LLP</sup>

**John D. Cook**
*Partner*

January 25, 2017

<u>VIA CM/ECF</u>

The Honorable Thérèse Wiley Dancks
United States Magistrate Judge
Federal Building and U.S. Courthouse
P.O. Box 7346
Syracuse, NY 13261-7346

      Re:   *Car-Freshner Corporation* et al. *v. Crocs, Inc.*
             Civil Action No. 7:16-cv-00068-GLS-TWD
             Response to Plaintiffs' January 17, 2017 Letter

Dear Judge Dancks:

      We, along with co-counsel Perkins Coie LLP, represent defendant Crocs, Inc. and Ms. Kerry Lehrke (a non-party) in connection with the above-referenced action. The Court should deny Plaintiffs Car-Freshner Corporation's and Julius Samann, Ltd.'s (together "Plaintiffs" or "CFC") underlying discovery requests for two reasons. First, at least as to some of the issues CFC raises, CFC's request is premature. The parties continue to communicate about acceptable compromises on at least some of the issues. Second, as to those issues on which it appears a compromise is unlikely, CFC's discovery demands are improper.

## Discovery Background

      CFC's discovery requests focus on issues related to Ms. Lehrke, the former Crocs graphic designer who created the accused Christmas tree design. CFC deposed Ms. Lehrke on October 6, 2016, while she was still employed by Crocs and pursuant to ***both*** an individual deposition notice and as a 30(b)(6) corporate designee on behalf of Crocs. Ms. Lehrke has since voluntarily left Crocs, resides in another state, and has a new job.

      At Ms. Lehrke's deposition, Plaintiffs' counsel questioned her extensively on her creation of the accused Christmas tree design and its origins. At approximately 11 a.m., Ms. Lehrke identified the vector image website Vecteezy as the original source of her design (she also testified that she edited the image). Between her first mention of Vecteezy at 11 a.m. and the conclusion of the deposition at 3:05 p.m., CFC's counsel took almost an hour and a half of breaks (86 minutes). During the 51-minute lunch break (the parties had pre-ordered, and lunch was delivered to the deposition site), CFC's counsel requested that Crocs remove the presumptive "Attorneys' Eyes Only" designation for the portions of the transcript describing the

Barclay Damon Tower – 125 East Jefferson Street – Syracuse, New York 13202  barclaydamon.com
jcook@barclaydamon.com  Direct: 315.425.2885  Fax: 315.703.7353
Also Admitted In: Massachusetts

13001779.1

The Honorable Thérèse Wiley Dancks
January 25, 2017
Page 2

creation of the accused Christmas tree design so that he could share it with CFC, stating that he believed Ms. Lehrke's testimony would facilitate settlement efforts because it showed there was no ill will or intentional infringement in the creation of the accused Christmas tree design. Crocs of course agreed, and later in the deposition CFC's counsel expressly stated on the record that he "credit[ed]" Ms. Lehrke's testimony. *See* Ex. 1 ("Lehrke Deposition") at 137:16-25. Although time remained on the record, at 3:05 p.m., CFC's counsel concluded the deposition and rushed out to catch his plane.

In an abrupt about-face, CFC is now apparently intent on discrediting the very testimony from Ms. Lehrke that counsel first represented could facilitate settlement and later "credit[ed.]" Notwithstanding its dogged efforts -- issuing dozens of new (largely duplicative) deposition topics and document requests to Crocs; subpoenaing and deposing Vecteezy; and deposing Ms. Lehrke's superior at Crocs, the Chief Marketing Officer -- there is no evidence or information that contradicts Ms. Lehrke's testimony about the origins of the accused Christmas tree design.

Thus, CFC has already had a full and fair opportunity to obtain all of the information it needs on the subjects of its discovery requests, and its request to depose Ms. Lehrke for a second time and pursue additional 30(b)(6) topics and documents are duplicative and improper.

### CFC's Request to Re-Depose Non-Party Kerry Lehrke Should Be Denied

The Court should deny the request to depose Ms. Lehrke for a second time for no fewer than five reasons.

First, Rule 30(a)(2)(A)(ii) requires leave of Court before deposing a witness a second time, and CFC failed to seek such leave. Courts have "routinely denied motions seeking leave to re-depose a party for failure to comply with [Rule 30]." *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 239-40 (S.D.N.Y. 2002) (denying plaintiff's request for leave to re-depose witness because plaintiff failed to seek leave of court before serving subpoena to re-depose the witness); *see also PKF Int'l Corp. v. IBJ Schroder Leasing Corp.*, No. 93CIV.1816(SAS)(HBP), 1996 WL 591213, at *2 (S.D.N.Y. Oct. 15, 1996) (granting plaintiff's application to quash subpoena for a second deposition of a witness because defendant did not first seek leave of court).

Second, the requested second deposition is duplicative and unnecessary. CFC has already deposed Ms. Lehrke, and left approximately three hours of time on the record. CFC had approximately five hours of deposition time, and almost an hour and a half of breaks, after Ms. Lehrke first mentioned Vecteezy to ask her questions about Vecteezy and related design topics. CFC's counsel was clearly interested in and focused on that topic -- in addition to asking the witness numerous questions in the deposition, he sought and received permission during the lunch break to discuss Ms. Lehrke's testimony with his client -- but never mentioned on the record his desire for an additional deposition based on the information that Ms. Lehrke provided that day or for any other reason. That CFC chose not to use the ample time at the first deposition to pursue the information they now seek is not sufficient reason to depose Ms. Lehrke, a non-party, for a second time. *See SMD Software, Inc. v. EMove, Inc.*, No. 5:08-CV-403-FL, 2014 WL 794031, at *3 (E.D.N.C. Feb. 27, 2014) (denying motion to reopen deposition because

13001779.1

The Honorable Thérèse Wiley Dancks
January 25, 2017
Page 3

defendants had ample opportunity to question the witness at the prior deposition and chose not to as a "tactical decision"); *Dash v. Seagate Tech. (US) Holdings, Inc*., No. CV 13-6329 LDW AKT, 2015 WL 4257329, at *6–7 (E.D.N.Y. July 14, 2015) (denying defendant's motion to re-open deposition of the plaintiff because the information sought by the new deposition "could have been ascertained and further examined during Plaintiff's [first] deposition.").

Third, CFC's argument that Crocs' interrogatory response was somehow deficient is misleading and a red herring. CFC has never identified a specific interrogatory that it believes Crocs failed to completely answer, probably because there is none. The interrogatory to which CFC may be referring asked Crocs to:

> State the **date** when Crocs first selected the Nearly Identical Tree Design for use or intended use in connection with the marketing, promotion, advertising, distribution or sale of any Crocs' Goods, including footwear, and describe in detail the **reason(s) for and circumstances of** the selection of the Nearly Identical Tree Design, **identifying all persons or entities**-including third parties-who participated in or were consulted in such selection, or who participated in the creation, design or adoption of the Nearly Identical Tree Design, including a description of the nature of their participation or consultation.

Ex. 1 at 6 (emphasis added). In short, it sought the "when," "why," and "who" of the creation of the accused Christmas tree design. Crocs responded by identifying the timing of the creation of the Christmas tree design,[1] the reason and circumstances for its creation (part of Crocs' preparation of an icon theme for its 2015 holiday marketing campaign), and the five individuals involved in its creation. This was a complete response. If CFC sought to find out *how* the Christmas tree design was created or related technical creation information, its interrogatories were, at best, extremely inartfully worded. Crocs did not "change" its story, and CFC cannot use its own poorly worded request to punish Ms. Lehrke.

Fourth, the notion that CFC was somehow surprised about Crocs' use of the Vecteezy website is disingenuous. CFC is familiar with vector websites and uses vector images itself in the regular course of its business. *See, e.g.,* Ex. 2. In addition, CFC's statement that Vecteezy "found no record of the purported download or the Disputed Tree Design" is also misleading. Vecteezy testified that nearly 90% of its users do not have a registered account, and thus there is no "record" for approximately 90% of downloads from Vecteezy.com. *See* Ex. 3, Rubel Deposition at 100:3-11 ("Q. And what percentage of downloads of images from Vecteezy occur without the user having an account? A. I believe we ran those numbers and it was about 88 percent download without having an account."); 130:23-132:2 ("Q. It's simply that if there's no account for a particular person, there is no way to track their downloads; right? A. Correct."). Vecteezy confirmed there was no account for Ms. Lehrke or anyone at Crocs. Ex. 4 at 4-5. It is therefore completely unsurprising that Vecteezy did not have a "record" of the download.

---

[1] The original date identified by Crocs was off by a few months; Crocs recently served an amended response to correct the date.

The Honorable Thérèse Wiley Dancks
January 25, 2017
Page 4

Finally, Ms. Lehrke's status as a non-party, currently working in a different state, makes appearing for a second deposition especially burdensome. *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("[T]he fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances"); *see also Jack Frost Labs., Inc. v. Physicians & Nurses Mfg. Corp.*, No. 92 CIV. 9264 (MGC), 1994 WL 9690, at *2 (S.D.N.Y. Jan. 13, 1994) ("[W]e are instructed to be particularly sensitive to any prejudice to non-litigants drawn against their will into the legal disputes of others").

### CFC's Duplicative 30(b)(6) Deposition Notice

CFC's Second 30(b)(6) Notice is duplicative of topics included in CFC's first deposition notice, and/or covers topics upon which Crocs' 30(b)(6) corporate designee already testified, as indicated on the face of the requests. 11 of the 18 requests refer to Ms. Lehrke, and several even directly reference Ms. Lehrke's prior testimony. *See* Ex. E at 2-12. CFC has thus already had an opportunity to inquire of the most knowledgeable person about these topics. *Presse v. Morel*, No. 10 CIV. 2730 WHP MHD, 2011 WL 5129716, at *1 (S.D.N.Y. Oct. 28, 2011) (declining to allow defendant to take 30(b)(6) depositions of two witnesses who had already been individually deposed on similar topics to the 30(b)(6) topics finding that a second deposition on those topics would be a "wasteful procedure").

In regards to the financial topics contained in the 30(b)(6) notice, Crocs made clear in its communications with CFC that Crocs would be willing to discuss a potential 30(b)(6) deposition on these topics after CFC had an opportunity to review Crocs' financial documents. Crocs has been working to determine (1) whether the financial data CFC's corresponding document requests seek exists as requested by CFC, and (2) gathering and producing summary financial data to supplement the data that Crocs has already produced to CFC in order to facilitate CFC's understanding of that information. CFC's letter to the Court unnecessarily truncated the conferral on this issue.[2] Crocs is hopeful that the parties can resolve this issue without Court intervention.

### CFC's Baseless, Repetitive Document Requests

CFC's document requests are overbroad on their face. *See, e.g.*, Ex. F at 47 ("All documents concerning www.vecteezy.com"). Moreover, they seek documents that the corporate representative for Crocs **already testified do not exist.** *Compare* Ex. F at RFP No. 54 (seeking documents concerning Ms. Lehrke's editing of the Christmas tree design) *with* Lehrke Deposition at 126:13-130:10; 129:21-25 ("Q: Are you saying until this document -- until this tree

---

[2] CFC makes much of the timing here. The parties conferred on January 5. Crocs spent the next week preparing for CFC's deposition of Crocs' Chief Marketing Officer on January 10, as well as preparing for the upcoming 30(b)(6) depositions of CFC's witnesses on January 18 and 19. After those two weeks of depositions, Crocs served the amended responses on January 24th. CFC has manufactured a rush where there is none; discovery does not close until the end of February.

13001779.1

The Honorable Thérèse Wiley Dancks
January 25, 2017
Page 5

design was finalized for inclusion in the deck, not a single document would be generated or maintained? A. No, it wouldn't. . . . "); 143:23-144:6 ("Q. Okay. So-- and none of the design trail, none of those documents are retained in any capacity? A. They are not."). Additionally, Vecteezy also confirmed that many of these documents do not exist. *See* Ex.4, November 18, 2016 Response of Eezy Inc. to Plaintiffs' Subpoena Duces Tecum at 4 ("After a reasonably diligent search, Eezy has not located any record of any Vecteezy accounts created using an email address that includes the terms "crocs" in the domain."). These requests are therefore improper, duplicative, and certainly not proportional to the needs of the case.

To the extent that CFC claims it was confused by Crocs' responses, which quote its corporate designee stating those documents do not exist, Crocs has since provided amended RFP responses stating that, where Crocs' corporate designee testified there are no documents, Crocs has no responsive documents. Crocs told CFC that it would provide such an amended response when it conferred with CFC, and it has now.

In regards to the financial requests, Crocs also told CFC's counsel that it had conducted a reasonable search and discovered it did not have much of the data requested by CFC. Again, Crocs told CFC that it would amend its responses to reflect this information and has since amended its response, mooting this issue. Crocs has since produced some other additional data on these topics.

                                      Respectfully submitted,

                                      John D. Cook

JDC:vrf

cc:      Counsel of Record
          **Via CM/ECF**

13001779.1